UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE RAMIREZ ESCOBAR,<br>    Plaintiff,<br>v.<br>MIDLAND CREDIT MANAGEMENT,<br>    Defendant. | No. 3:18-cv-819 (MPS)<br><br>August 8, 2019 |

## RULING ON MOTION TO DISMISS

Plaintiff, Jose Ramirez Escobar, brings this suit against Defendant, Midland Credit Management ("Midland"), alleging that Midland violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Midland has moved to dismiss Escobar's Second Amended Complaint (ECF No. 18 (hereinafter "SAC")) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22.) For the following reasons, Midland's motion to dismiss is DENIED.

### I. Factual Allegations

The factual allegations below are drawn from Escobar's Second Amended Complaint and are accepted as true for the purpose of adjudicating this motion.

On an unspecified date, Escobar "incurred a credit card debt through personal use." (SAC ¶ 7.) Midland is a debt collector, as the principal purpose of its business is to collect debts and it regularly attempts to collect on debts primarily incurred for personal, family, or household purposes. (*Id*. at ¶¶ 5, 9.) Midland voluntarily and continuously reported Escobar's debt to credit reporting agencies in an attempt to collect on Escobar's credit card debt. (*Id*. at ¶ 10.)

Midland's credit reporting collection attempts failed, so Midland "sent" the debt to a third-party collector, London & London. (*Id*. at ¶ 11.) London & London subsequently filed litigation against Escobar. (*Id*. at ¶ 12.) Through a check dated August 21, 2017, Escobar paid

and settled the outstanding debt and the litigation was withdrawn. (*Id*. at ¶ 13.) Escobar understood that by paying the debt, his credit report would no longer reflect that the debt was due and owing. (*Id.*) Had Escobar known that Midland would continue reporting the debt as unpaid despite his payment, Escobar would not have paid the debt in the first place, or would have negotiated substantially better terms. (*Id*.)

On or about October 10, 2017, Escobar reviewed a trade line on his credit report placed by Midland for the paid debt. (*Id*. at ¶ 14.) He observed that Midland failed to report the trade line as paid with each of the credit bureaus. (*Id*. at ¶ 15.) Escobar alleges on information and belief that Midland continued to voluntarily report the debt as owed after receiving Escobar's August 21, 2017 payment. (*Id*. at ¶ 16.) In the alternative, Escobar alleges that Midland failed to mark the debt as paid after receiving payment, and thus continued to hurt Escobar's credit score and credit worthiness. (*Id*. at ¶ 17.) By continuing to report a delinquency or alternatively allowing the debt to remain reported as unpaid, Midland caused injury to Escobar's credit reputation. (*Id*. at ¶ 18.) By making the August 21, 2017 payment with the "inherent understanding that once a debt is paid [his] credit report would reflect that he no longer owes money," Escobar suffered actual damages by not getting the benefit of his settlement bargain. (*Id*. at ¶ 19.) He further claims mental anguish from Midland's continued representation to third parties that the debt was due and owing when it was not. (*Id*. at ¶ 20.)

Escobar claims that the above actions violated various provisions of the FDCPA. Specifically, he claims that Midland knowingly reported false information to the credit bureaus concerning his credit card debt in violation of 15 U.S.C. §§ 1692e, e(2), e(8) and e(10). (SAC ¶ 22.) He also contends that Midland, through its agent London & London, violated 15 U.S.C. § 1692e by allowing Escobar to believe that his payment would be accurately reflected within his

credit report, yet continuing to report, or allow the reporting of, the trade line as unpaid. (SAC ¶ 23.) Finally, Escobar claims that Midland violated 15 U.S.C. § 1692f by allowing Escobar's credit to be harmed even after Escobar made payment and even though Escobar understood that the credit report would not continue to show a balance owing. (*Id*. at ¶ 24.) Escobar seeks declaratory relief, statutory and actual damages, and costs and reasonable attorney's fees under 15 U.S.C. § 1692k.

## II. Legal Standard

On a motion to dismiss under Rule 12(b)(6), I take the plaintiff's factual allegations in the complaint "to be true and draw[] all reasonable inferences in" his favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Discussion

Midland's arguments to dismiss the SAC fall along three lines: first, that Escobar lacks Article III standing because he has not suffered an injury-in-fact (ECF No. 22-2 at 17–19); second, that the SAC fails to state a claim for a violation of the FDCPA (ECF No. 22-2 at 9–17), and third, that Escobar's allegations concerning actual damages are conclusory (ECF No. 22-2 at 19–21.)

For the reasons set forth below, I conclude that Escobar has standing to sue and that his claims under 15 U.S.C. §§ 1692e and 1692f as well as his claim for actual damages may proceed.

**A.    Standing**

The jurisdiction of federal courts under Article III of the Constitution is limited to "Cases" or "Controversies." U.S. Const, art. III, § 2, cl. 1. One consequence of this limitation is that a plaintiff must demonstrate Article III standing to invoke the jurisdiction of a federal court. To do so, "a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 187–88 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, Midland asserts Escobar lacks Article III standing because he has not suffered an injury-in-fact. (ECF No. 22-2 at 17–19.)

An injury-in-fact involves the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (1992) (citation and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing th[is] element[]." *Id.* at 561. However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* Midland argues that Escobar's injury is not concrete, particularized, nor actual or imminent. (ECF No. 22-2 at 17–19.) I disagree.

First, Midland argues that Escobar has not alleged a concrete injury, citing the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (ECF No. 22-2 at 18.) In *Spokeo*, the Supreme Court reversed the Ninth Circuit for failing to address whether particular

4

procedural violations of the Fair Credit Reporting Act (FCRA) were sufficiently concrete to confer Article III standing. *Spokeo*, 136 S. Ct. at 1549. The Court expanded on the definition of "concreteness." While the Court recognized that a "bare procedural violation, divorced from any concrete harm," does not confer Article III standing, it also acknowledged that "the risk of real harm" "can[] satisfy the requirement of concreteness." *Id.* at 1549-50. In such a case, a plaintiff does not need to allege "any *additional* harm beyond the one Congress has identified." *Id.* at 1549. The Court left open the question of "whether the particular procedural violations [of the FCRA] alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1150. It warned, however, that "violation of one of the FCRA's procedural requirements may result in no harm" and that "not all inaccuracies cause harm or present any material risk of harm." *Id.* More recently, the Second Circuit stated, "We understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Strubel*, 842 F.3d at 190.

Midland contends that Escobar alleges a bare procedural violation of the FDCPA that is insufficient to confer standing. (ECF No. 22-2 at 19.) I disagree. First, most courts have found that the FDCPA creates a substantive, not merely procedural, right "the violation of which would itself give rise to a concrete injury." *Guerrero v. GC Services Limited Partnership*, 2017 WL 1133358 at *10 (E.D.N.Y. Mar. 23, 2017). Second, even if FDCPA rights are viewed as procedural, Escobar alleges more than a "bare procedural violation" because a violation of the FDCPA risks real harm to Escobar's interests as a consumer. *See Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-CV-673 (RNC), 2018 WL 1582515, at *6 (D. Conn. Mar. 31,

2018) (post-*Spokeo* case noting a violation of § 1692e risks real harm to consumers' interests, including to be free from financial stress and invasions of privacy); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017) (post-*Spokeo* case holding that plaintiff had concrete injury where "[FDCPA] violation exposed [plaintiff] to a real risk of financial harm caused by an inaccurate credit rating").

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) ("The FDCPA ... was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life.") (internal citations omitted). Section 1692e prohibits inaccurate credit disclosures to protect against the risk of an inaccurate credit rating—a financial harm that is concrete. *Paz v. Portfolio Recovery Assocs., LLC*, No. 15 C 5073, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016), *aff'd sub nom. Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018). Here, Escobar alleges Midland's inaccurate credit reporting violated the FDCPA and hurt his credit score and "credit reputation." (SAC ¶¶ 17–18.) He also alleges he suffered "mental anguish" when he learned of Midland's misreporting of the status of his debt. (SAC ¶ 20.) These are concrete injuries.

Midland's suggestion that Escobar has not alleged a "particularized" injury is likewise mistaken. (ECF No. 22-2 at 14.) "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted). Escobar's injury is particularized because Midland's communication of false information to credit reporting agencies allegedly harmed Escobar's credit. (SAC ¶¶ 17–18); *see*

*Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1237 (D. Colo. 2016) (demonstrating inaccurate or incomplete reports regarding a debt to credit reporting agencies may harm one's credit); *see also Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018) (noting material information provided to CRAs "will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score"). Escobar sues to vindicate interests particular to him—specifically, his credit worthiness. Thus, Midland's alleged conduct, knowingly reporting false information to credit bureaus regarding Escobar's credit card debt, affected Escobar "in a personal and individual way."

Finally, Midland argues that Escobar has not alleged an "actual or imminent" injury because he only asserts an "increased risk of harm," citing *Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41, 45 (2d Cir. 2017). (ECF No. 22-2 at 19.) I disagree. Escobar has alleged he suffered actual harm to his credit score and credit reputation, and that once he learned that Midland had falsely reported him delinquent, he suffered "mental anguish." (SAC ¶¶ 17–18, 20.) On a motion to dismiss, the Court presumes general factual allegations embrace the specific facts necessary to support a plaintiff's claim, and such general factual allegations may be sufficient to establish standing. *See Lujan*, 504 U.S. at 561 (citation omitted). Midland points to a case regarding imminence, but Escobar need only allege actual *or* imminent injury to have standing. Escobar has sufficiently alleged actual harm to confer Article III standing.

Escobar's alleged injury is particularized, concrete, and actual. Therefore, he has Article III standing.

### B. Merits

Midland contends that Escobar has failed to state a claim for violation of the FDCPA. Its threshold argument is that Escobar is really trying to assert a claim under the Fair Credit

7

Reporting Act ("FCRA"), because reporting to credit bureaus is not a communication covered by the FDCPA. (ECF No. 22-2 at 9–11.) Even if the FDCPA applies, Midland argues that Escobar has failed to plausibly allege a violation of 15 U.S.C. § 1692e or any of its subsections. (*Id.* at 12–16.) Finally, Midland argues that Escobar's claim under 15 U.S.C. § 1692f is duplicative of his FDCPA claims and fails as well. (*Id.* at 16–17.) I address each argument in turn.

First, Midland is correct that one of Escobar's two theories of his case is inadequately pled. (See ECF No. 25 at 8.) Escobar's first theory is that he had an "inherent understanding" when he paid off his debt on August 21, 2017 that Midland would no longer report the debt as due, and thus Escobar was deprived of the benefit of his settlement bargain. (SAC ¶¶ 13, 19.) He alleges that Midland, through London & London, "allowed [Escobar] to believe that payment of the debt would be accurately reflected within his credit report," in violation of §§ 1692e and e(10). (*Id.* ¶ 23.) But Escobar has not alleged any facts suggesting what Midland or London & London might have done to "allow[]" Escobar to hold this belief. Escobar has not alleged a single communication, contract term, or other action giving rise to a plausible factual basis for his "inherent understanding" or what London & London or Midland did that led him to believe that payment of the debt would be reflected on his credit report within the six or seven weeks between August 21 and October 10, 2017. Accordingly, his allegations concerning denial of "the benefit that he bargained for within the settlement" (*id*. ¶ 19) fail to state a cognizable claim. I turn to Escobar's second theory, which is that Midland either continued to voluntarily report the debt as still owed or alternatively failed to mark the debt as paid despite an affirmative duty to update its status. (*Id.* ¶¶ 16–17.)

1. Escobar's Claims Do Not Fail Because They May Also Arise Under the FCRA

Midland first argues that Escobar "conflates the duties of a furnisher under the FCRA with those of a debt collector under the FDCPA," and that Escobar's surviving theory really concerns the reporting of his account to the CRAs under the FCRA. (ECF No. 22-2 at 9–11.)

Midland's argument fails for a straightforward reason: the FCRA and FDCPA are not mutually exclusive causes of actions. *See Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 172 (E.D.N.Y. 2013) (holding that misrepresentations made to a credit reporting agency "fall comfortably within the plain language of the FDCPA," and "nothing in the [FCRA] or the case law suggests that the FCRA provides the exclusive remedy for misrepresentations to a credit reporting agency"); *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010) ("[T]he FCRA does not provide that it is the exclusive remedy when a debt collector furnishes false information to a credit bureau. Even if a consumer cannot sue a furnisher of information under the FCRA, nothing forbids a consumer from suing a debt collector under the FDCPA.").

2. Escobar's Allegations Plead the Elements of A Claim Under 15 U.S.C. § 1692e

Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The provision includes a non-exhaustive list of examples of prohibited practices. *Id.* As relevant here, these include:

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
[. . .]

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> [. . .]
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2), (8), (10).

Midland first suggests that because it reported the debt to a CRA, and not Escobar, there is no "communication" within the scope of the FDCPA. (ECF No. 22-2 at 9.) But the FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to *any person* through any medium." 15 U.S.C. § 1692a(2) (emphasis added). This definition does not require that the conveying of information be to or from the person who incurred the debt. *See e.g.*, *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 491–92 (S.D.N.Y. 2014) (noting that communications regarding a plaintiff's debt to a third party, including subsequent purchasers, transferees or assignees, fall within the scope of the FDCPA); *Fritz*, 955 F. Supp. 2d at 171–72 (misrepresentations to credit reporting agencies regarding plaintiff's debt fall within FDCPA); *Finnegan v. Univ. of Rochester Med. Ctr.*, 21 F. Supp. 2d 223, 229 (W.D.N.Y. 1998) (allegations of defendant's negative reports to credit reporting agencies, which resulted in derogatory information appearing on plaintiff's credit report, sufficient to state a claim under 15 U.S.C. § 1692e(8)). Further, § 1692e(8) specifically applies to communications with "any person," including but not limited to, communications with credit reporting agencies. *Kinel v. Sherman Acquisition II, LP*, No. 05 CIV. 3456(KMW), 2007 WL 2049566, at *1 (S.D.N.Y. July 13, 2007).

Midland next argues that its communication to the CRA was not "in connection with the collection of any debt." 15 U.S.C. § 1692e. Midland cites two cases in which the courts

dismissed plaintiffs' FDCPA claim because defendants' allegedly false misrepresentations were made in response to requests under the FCRA after plaintiffs disputed their debts. *Asufrin v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 9077, 2016 WL 1056669, at *6 (N.D. Ill. Mar. 17, 2016); *Camarena v. Wells Fargo Bank, N.A.*, No. CIV. 14-131 DSD/JJG, 2014 WL 4055631, at *2 (D. Minn. Aug. 14, 2014). In both cases, the communications were made to comply with FCRA reporting requirements, namely, the requirement that a debt collector respond to a notice that a debt is disputed by the consumer. *See* 15 U.S.C. § 1681i(a). Thus, both courts found that the communications were not made "in connection with the collection of any debt." *Asufrin*, 2016 WL 1056669, at *6; *Camarena*, 2014 WL 4055631, at *2.

By contrast, the parties agree here that there is no allegation that Escobar's debt was *disputed*, which would have imposed a FCRA reporting requirement on Midland. Instead, Escobar specifically alleges that, from the start, Midland acted on its own initiative in reporting his debt to CRAs and did so in an attempt to collect the debt. (SAC ¶¶ 10, 16.) Thus, Midland's alleged reporting of the debt to the CRAs was voluntary, and not in an attempt to comply with the FCRA. "The distinction between voluntary and required communication with consumer reporting agencies is significant." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914–15 (8th Cir. 2014).

Similarly, Midland's argument that Escobar did not allege any activity that "amounts to debt collection" or "that [the tradeline] was placed [on Escobar's credit report] in an attempt to collect a debt" also fails. (ECF No. 22-2 at 9–10.) Escobar explicitly alleges that Midland voluntarily and continuously reported Plaintiff's debt to credit reporting agencies "[i]n *attempt to collect* said [credit card] debt." (SAC ¶¶ 10, 16.) (emphasis added).

11

As another judge in this district has recognized, "reporting debts to credit reporting agencies is one of the most commonly-used arrows in the debt collector's quiver." *Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-CV-673 (RNC), 2018 WL 1582515, at *11 (D. Conn. Mar. 31, 2018) (citation omitted). Communications to credit bureaus, effectuating changes to a consumer's tradeline, do not merely inform a consumer of the status of his account, but may induce a debtor to pay to remove a cloud on his credit history. *Hall v. Sw. Credit Sys., L.P.*, No. CV 17-2631 (BAH), 2019 WL 1932759, at *4 (D.D.C. May 1, 2019) ("Debts are submitted to credit bureaus to impair the debtor's credit score so that, in turn, the debtor is induced to pay the debt."). This inducement of payment can amount to debt collection. *See Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384–85 (7th Cir. 2010) (ruling that the FDCPA "does not apply to *every* communication between a debt collector and a debtor," but that a communication made "to induce" a debtor to settle her debt will trigger the statute's protections). Thus, Escobar has plausibly alleged that Midland's reports to credit bureaus were communications made in attempt to collect a debt from Escobar in violation of the FDCPA. *See also Sullivan v. Equifax, Inc.,* No. CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt…subject[ing] a debt collector to liability under the FDCPA.").

Escobar also sufficiently pleads that Midland's representation was false. Escobar alleges that after receiving payment on August 21, 2017, Midland reported to credit bureaus that Escobar's debt was still outstanding while knowing it was not. (SAC ¶¶ 16, 22.) The debt still showed as owed when Escobar viewed his tradeline on October 10, 2017. (*Id*. ¶¶ 14–15.) In order for there to be a violation, a communication must also be "false, deceptive, or misleading," as determined by the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318

(2d Cir. 1993); *see generally Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (holding that FDCPA claims should be reviewed by considering "how the least sophisticated consumer"—not "average, everyday, common consumer—understands the notice"). Here, the alleged misstatement—telling the CRAs that Escobar owed money when Midland knew he did not—is on its face a false statement regardless of the recipient's sophistication. *See Plummer*, 66 F. Supp. 3d at 490 n.2.[1]; *see also* 15 U.S.C. § 1692e(10) (banning the use of any "false representation . . . to collect or attempt to collect any debt"). The least sophisticated consumer could easily be misled or inaccurately interpret the status of his debt when his tradeline reflects an outstanding debt obligation nearly two months after making payment. Escobar's allegations sufficiently plead a "false, deceptive, or misleading representation" by Midland in violation of § 1692e.

Midland argues that even if the tradeline on Escobar's credit triggers § 1692e, Escobar's claims lack materiality.[2] (ECF No. 22-2 at 13–14.) The materiality requirement "shields debt collectors from liability for 'mere technical falsehoods' while still holding them liable for communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute

---

[1] Midland argues it had no affirmative duty to update Escobar's tradeline after he paid his debt. (ECF No. 22-2 at 15–16.) I agree. Section 1692e "does not impose an affirmative duty on debt collectors to update the status of each debt it has reported." *Vernot v. Pinnacle Credit Servs., L.L.C.*, No. 16-CV-3163, 2017 WL 384327, at *1 n.2 (E.D.N.Y. Jan. 26, 2017); *see also Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir. 2013) ("We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify the CRAs that a consumer disputes the debt *unless* the debt collector knows of the dispute and elects to report to a CRA."). But this does not help Midland because Escobar alleges that Midland's reports were elective, *i.e.*, that it chose to make an affirmative misrepresentation that his debt was still owing after he had paid it.

[2] Midland's briefing on materiality is almost exclusively addressed to Escobar's first theory regarding his "inherent understanding," which is inadequately pled. (ECF No. 22-2 at 13–14.) Midland does not address the materiality of Escobar's surviving claim, which alleges that Midland continued to voluntarily report the debt as unpaid to CRAs even after it was paid.

collection." *Garcia v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:16-CV-791 (VAB), 2018 WL 6590356, at *4 (D. Conn. Dec. 14, 2018) (quoting *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018)). Escobar alleges that Midland continued to report his debt as unpaid to CRAs even after he paid it, causing injury to Escobar's credit reputation. (SAC ¶¶ 16, 18.) The misstating of a debt obligation, especially the misstatement of the very existence of such an obligation, is no "mere technical falsehood," and may mislead the least sophisticated consumer. *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 441–43 (2d Cir. 2018). The false reporting of a debt on a consumer's credit report may harm her application for a loan, housing, or employment, and may prompt her to pay out of fear or confusion. *See Sayles v. Advanced Recovery Sys., Inc.*, 206 F. Supp. 3d 1210, 1216 (S.D. Miss. 2016), *aff'd*, 865 F.3d 246 (5th Cir. 2017). Escobar has plausibly alleged that the false representation by Midland to credit bureaus regarding a continuing debt obligation constituted a material misrepresentation.[3] Therefore, Escobar sufficiently alleges Midland made a false, deceptive or misleading representation in violation of § 1692e.

### 3. Escobar States a Claim for Violation of 15 U.S.C. § 1692f

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The subsections of § 1692f are "examples" of conduct that constitutes "unfair or unconscionable" means of debt collection. *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 125 (2d Cir. 2016). Escobar claims Midland violated § 1692f by harming Escobar's credit after he had made payment. (SAC ¶ 24.) Midland first argues this conduct does not fall under § 1692f because Escobar had already paid off his

---

[3] Midland further argues Escobar's claims fail because Escobar had already paid his debt at the time complained of, such that there was no "debt" and Escobar is not a "consumer" under the FDCPA. (ECF No. 22-2 at 12–13.) I disagree. A "debt" under the FDCPA means "any obligation or *alleged obligation* of a consumer to pay…." 15 U.S.C. § 1692a(5) (emphasis added).

debt and it no longer existed. (ECF No. 22-2 at 16.) However, under § 1692f, "the collection of an invalid debt" is an unfair practice. *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017); *see also* 15 U.S.C. § 1692f(1). Although Escobar paid his debt, he claims Midland's continued reporting of his debt as unpaid to credit bureaus harmed his credit. (SAC ¶¶ 16–17.) Since reports to credit rating agencies may constitute communications sent in connection with the collection of a debt under the FDCPA, *Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-CV-673 (RNC), 2018 WL 1582515, at *11 (D. Conn. Mar. 31, 2018), Midland's allegedly inaccurate reporting to credit agencies may constitute the collection of an invalid debt or the collection of an amount not "permitted by law," 15 U.S.C. § 1692f(1), in violation of § 1692f. No further allegations of "unfair and unconscionable conduct" are needed. *Raytman v. Jeffrey G. Lerman, P.C.*, No. 17 CIV. 9681 (KPF), 2018 WL 5113952, at *6 (S.D.N.Y. Oct. 19, 2018) (citing *Vangorden*, 897 F.3d at 438).

In its motion, Midland also argues that where a plaintiff's § 1692f claim does not identify different conduct than the allegations underlying then plaintiff's § 1692e claim, plaintiff's § 1692f claim fails. (ECF No. 22-2 at 16–17.) But § 1692e and § 1692f are not mutually exclusive, and the same conduct by a debt collector can violate both sections at once. *Vangorden*, 897 F.3d at 437 (citing *Arias*, 875 F.3d at 135). Each section targets a different type of misconduct: § 1692e "targets practices that take advantage of a debtor's naiveté or lack of legal acumen," while § 1692f "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias*, 875 F.3d at 135–36. Communicating "false, deceptive, or misleading" information regarding Escobar's debt obligation to credit bureaus, harming Escobar's credit, may violate both §§ 1692e and 1692f as Escobar has alleged.

## C. Damages

Escobar seeks declaratory relief; statutory and actual damages under 15 U.S.C. § 1692k; and costs and reasonable attorney's fees also under 15 U.S.C. § 1692k. Midland argues Escobar has failed to state a claim for actual damages beyond "conclusory, bare assertions." (ECF No. 22-2 at 19–20.) But the FDCPA authorizes recovery for "*any* actual damage" sustained by a consumer as a result of a debt collector's violation of the Act; damages are not an element of an FDCPA claim. 15 U.S.C. § 1692k(a)(1) (emphasis added). To state a claim for actual damages under the FDCPA, a plaintiff need only state that he is seeking actual damages. *See, e.g., Ferrante v. Law Offices of Lewisohn & Lewisohn*, No. 15-CV-5473(SJF)(SIL), 2016 WL 8711075, at *4 (E.D.N.Y. July 15, 2016); *Abramov v. I.C. System, Inc.*, 65 F. Supp. 3d 323, 326–27 (E.D.N.Y. 2014); *Alevsky v. GC Servs. Ltd. P'ship*, No. 13-CV-6793 JG, 2014 WL 1711682, at *1–2 (E.D.N.Y. Apr. 30, 2014) ("[A]s a general matter damages are not an element of a cause of action. A Rule 12(b)(6) motion [to dismiss] therefore cannot challenge the demand for relief . . . .") (collecting cases).

Plaintiffs may recover actual damages for FDCPA violations resulting in mental anguish or emotional distress. *See* Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (FDCPA damages include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress"); *see also Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 69 (E.D.N.Y. 1994) (discussing Congress's concern for emotional harms that violations of the FDCPA, by their very nature, may be expected to cause). Escobar claims he became frustrated and agitated, suffering mental anguish, after learning Midland continued to represent his debt was still owing when in fact it was not. (SAC ¶ 20.) Escobar also asserts that Midland's continued reporting of a delinquency caused his

credit reputation to suffer. (SAC ¶ 18.) Whether Plaintiff will be able to prove these allegations at trial is a question for another day. At this stage, Escobar need only request relief as appropriate, which he has done. (*See* SAC at 4.)

Accordingly, Midland's motion seeking dismissal of Escobar's alleged actual damages is DENIED.

## IV. Conclusion

For the foregoing reasons, Midland's motion to dismiss (ECF No. 22) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         August 8, 2019